Marcie E. Schaap #4660
Joseph D. Amadon #16386
Marcie E. Schaap, Attorney at Law, P.C.
4760 S. Highland Drive   #333
Salt Lake City, Utah 84117
Telephone:     (801) 201-1642
Facsimile:     (801) 666-7749
E-mail:
marcie@marcieeschaap.com
joe@marcieeschaap.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., dba INTERMOUNTAIN MEDICAL CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> HMS HOST USA, INC., and ANTHEM BLUE CROSS AND BLUE SHIELD, <br><br> Defendants. | **COMPLAINT** <br><br><br> Case No. 2:18-cv-00648-DBP <br><br> Magistrate Judge Dustin B. Pead |

Plaintiff, through its undersigned counsel, complains and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, IHC HEALTH SERVICES, INC. ("IHC"), operates several hospitals in the Intermountain Area, including INTERMOUNTAIN MEDICAL CENTER ("IMC" or the "Hospital"), in Salt Lake City, Utah.

2. IHC and the Hospital may be referred to collectively herein as "Plaintiff."

3. HMS HOST USA, INC. ("HMS") is a foreign corporation.

4. HMS provided an employee benefit plan (the "Plan") for its employees and their beneficiaries.

5. HMS is the plan administrator of the Plan.

6. T.S. is a participant and beneficiary of the Plan.

7. ANTHEM BLUE CROSS AND BLUE SHIELD ("BXBS") is a foreign corporation.

8. HMS and BXBS shall be jointly referred to herein as the "Defendants."

9. HMS contracted with BXBS to insure the Plan and act as claims administrator.

10. BXBS was, at all relevant times herein, an agent of HMS.

11. BXBS was, at all relevant times herein, the health insurer for T.S.

12. T.S. was, at all times relevant hereto, a resident of the State of Utah.

13. T.S. signed a written assignment of benefits in favor of Plaintiff for all relevant claims herein.

14. Pursuant to the assignment of benefits, Plaintiff "stands in the shoes" of T.S. as a beneficiary of the Plan.

15. Plaintiff provided medical services to T.S. from August 13, 2015, through August 20, 2015 ("Dates of Service" herein).

16. This is an action brought by the Plaintiff to collect amounts owed for unpaid medical bills resulting from health care services provided to the Patient for which the Defendants agreed to pay but refused to pay once claims were submitted.

17. This is an action brought under ERISA. This Court has jurisdiction of this case under 29 U.S.C. §1132(e)(1). Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the communications during the administrative appeal process took place between the Plaintiff and the Defendants in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah. Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. §1391, jurisdiction and venue are appropriate in the District of Utah.

18. The remedies Plaintiff seeks under the terms of ERISA are for the benefits due under 29 U.S.C. §1132(a)(1)(B), for interest and attorneys' fees under 29 U.S.C. §1132(g), for statutory penalties under 29 U.S.C. §1132(c)(1), and for other appropriate equitable relief under 29 U.S.C. §1132(a)(3).

## FACTUAL BACKGROUND

### A. Medical Treatment

19. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

20. The billed charges for T.S.'s claim totaled $62,792.40.

21. The Defendants have paid only $11,789.48 for this claim.

22. A balance of $51,002.92 is still due to the Plaintiff by the Defendants for the services Plaintiff rendered to T.S.

### B. Claims and Claim Processing

23. The Hospital submitted its claims in a timely manner to the Defendants and/or their agents for T.S.'s treatment.

24. The Defendants and/or their agents denied the majority of the claims by contending that the treatment was performed out of network and exceeded usual, customary, and reasonable charges.

25. T.S.'s treatment was due to an emergent health issue that prevented him from seeking treatment at an in-network provider.

26. At the time of treatment, T.S. was 58-year-old male with a medical history significant for peripheral vascular disease, presumed chronic obstructive pulmonary disease, and recently diagnosed deep vein thrombosis (DVT) on anticoagulation therapy.

27. On August 13, 2015, T.S. presented to the Hospital's Emergency Department ("ED" herein) with progressive shortness of breath, chest pain, productive cough, emesis, rhinorrhea, nausea, and having not eaten for approximately five days.

28. T.S. was tachycardic with heart rate of 118 and dyspneic with respirations of 24, and he required oxygen at 4 liters per nasal cannula to maintain oxygen saturations greater than 90%. His right foot was pulseless with new decreased sensation, dusky coloration, and coolness to the touch. Extensive workup was done in the ED which revealed significantly elevated white blood cell count of 21.2, high potassium of 5.7, and low sodium of 132, severely elevated BUN and creatinine of 3.8 and 84 respectively, anion gap of 23, elevated troponin at 0.12, and lactate of 7.0. Chest x-ray was completed showing an oval mass-like density in the right mid-lung. He was given intravenous (IV) fluids, and was treated empirically with IV Levaquin, Zosyn, and Vancomycin for presumed sepsis of uncertain etiology.

29. T.S. was admitted inpatient to the shock trauma intensive care unit for further evaluation and treatment of his acute respiratory failure and other medical abnormalities. He was placed on continuous pulse oximetry with frequent vital signs and central venus pressure measurement. Intravenous fluids were administered and careful input and output were monitored via indwelling urinary catheter. Oncology, vascular surgery, and interventional radiology consultations were obtained. Numerous diagnostic studies were completed, resulting in eventual diagnoses of stage IV adenocarcinoma of the lung with malignant pericardial effusion, and cardiogenic shock secondary to cardiac tamponade, with resulting kidney failure, ischemic hepatopathy, metabolic acidosis, and right lower extremity ischemia. He demonstrated coagulopathy with INR of 9.8, likely secondary to malignancy and renal failure resulting in poor clearance of anticoagulant therapy. His leukocytosis persisted throughout his stay, although etiology was never clear.

30. T.S. received a swallow evaluation related to concern for aspiration. Occupational and physical therapies were provided in order to evaluate and maximize safe and functional mobility. Respiratory therapy provided evaluation, and facilitated oxygen therapy at 4-6 liters per nasal cannula, pulmonary exercises, and albuterol breathing treatments, blood gases, and sputum cultures, as necessary. Serial laboratory studies were obtained to monitor varying organ functions. Apical drain was placed, which helped to decrease his pericardial fluid and tamponade, as well as improving his right foot ischemia. Pericardiocentesis with cytology was performed, and lung biopsy was completed on August 18. He complained of severe headaches in addition to his chest pain. Pain was managed with IV Dilaudid, transitioning to oral oxycodone and hydrocodone prior to discharge.

31. T.S. received palliative care consultation on August 19, and treatment options were explained.

32. On August 20, 2015, lung biopsy results were revealed, confirming diagnosis of poorly differentiated lung adenocarcinoma with metastasis to the pericardium.

33. Because of his poor prognosis, T.S. opted for palliative care as opposed to aggressive treatment or further diagnostic studies. He was discharged home at his request to the care of his family on August 20, with discharge instructions, pending Hospice admission, home oxygen at 6 liters per nasal cannula, and a prescription for oxycodone for pain relief.

34. T.S.'s emergency evaluation and entire inpatient stay at the Hospital was appropriate and medically necessary in order to properly diagnose and treat his critical multifactorial medical condition. His presentation was complex, and adequate time was required to stabilize him medically, facilitate accurate diagnoses, and develop a reasonable plan of care.

35. All care was provided in accordance with current medical guidelines, under the direction of treating and consulting physicians, and based on ongoing assessment and pertinent clinical findings.

36. The Plaintiff submitted timely appeals to the Defendants and/or their agents.

37. The Plaintiff attempted to contact the Defendants and/or their agents on many occasions to appeal the denial of this claim, but the Plaintiff's attempts were futile.

38. The Plaintiff has also attempted to communicate with the Defendants on many occasions by phone as set forth in the electronic and written records kept by the Plaintiff of the

communications it has had with the Defendants and/or their agents during the claim and appeal processes.

39. A copy of the Plaintiff's communication records was sent to the Defendants prior to this litigation being filed.

40. The Defendants have not paid the outstanding balance due to the Plaintiff for the treatment the Hospital rendered to T.S.

41. A balance of $51,002.92, plus interest, remains due to the Plaintiff from the Defendants for the treatment the Hospital rendered to T.S.

## **FIRST CAUSE OF ACTION**
(Recovery of Plan Benefits Under 29 U.S.C. §1132(a)(1)(B))

42. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully stated herein.

43. The Plaintiff has submitted all proof necessary to the Defendants to support its claims for payment.

44. The Defendants have failed to provide evidence to the Plaintiff to support their basis for denial.

45. The Defendants have not fully reviewed or investigated all information sent to it by the Plaintiff and/or the Hospital, or available to it, which has caused the Defendants to deny a large portion of this claim.

46. The Defendants have failed to bear their burden of proof that an exclusion or requirement in the Plan Document supports their denial of a large portion of the claim for T.S.'s treatment.

47. The Defendants failed to offer the Plaintiff a "full and fair review" as required by ERISA.

48. The Defendants failed to offer the Plaintiff "higher than marketplace quality standards," as required by ERISA. MetLife v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

49. The actions of the Defendants and/or their agents, as outlined above, are a violation of ERISA, a breach of fiduciary duty, and a breach of the terms and provisions of the Plan.

50. The actions of the Defendants and/or their agents have caused damage to the Plaintiff in the form of a denial of ERISA medical benefits.

51. The Defendants are responsible to pay the balance of the claim for T.S.'s medical expenses, and to pay Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), plus pre- and post-judgment interest to the date of payment of the unpaid benefits.

//

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duties Under 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3))

52. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

53. Defendants have breached their fiduciary duties under ERISA in the following ways:

   A. Defendants have failed to discharge their duties with respect to the Plan:

      1. Solely in the interest of the participants and beneficiaries of the Plan and

      2. For the exclusive purpose of:

         a. Providing benefits to participants and their beneficiaries; and

         b. Defraying reasonable expenses of administering the Plan.

  3. With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

  4. By failing to fully investigate the Plaintiff's claims.

  5. By failing to fully respond to the Plaintiff's appeals and requests for information in a timely manner.

  6. And in other ways to be determined as additional facts are discovered.

54. The actions of the Defendants in breaching its fiduciary duties under ERISA have caused damage to the Plaintiff in the form of denied medical benefits.

55. In addition, as a consequence of the breach of fiduciary duties of the Defendants, the Plaintiff has been required to obtain legal counsel and file this action.

56. Pursuant to ERISA and to the U.S. Supreme Court's ruling in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866, 179 L.Ed. 2d 843 (2011), the Plaintiff's "make-whole relief" constitutes "appropriate equitable relief" under Section 1132(a)(3).

57. Therefore, the Plaintiff is entitled to payment of the medical expenses it incurred in treating T.S., as well as an award of interest, attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

## **THIRD CAUSE OF ACTION**

(Failure to Produce Plan Documents Upon Written Request - 29 U.S.C. §§1024(b)(4) and 1132(c)(1))

58. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

59. The Plaintiff requested a copy of the SPD and Plan Document from HMS, or its agents, on the following dates:

    A.  November 24, 2015;

    B.  November 11, 2016; and

    C.  June 11, 2018.

60. To date, the HMS has not provided a copy of the SPD and/or Plan Document to the Plaintiff.

61. The actions of the Defendants in failing to provide, within thirty (30) days after a written request was made, a copy of relevant Plan documents, as requested on several occasions by the Plaintiff, is a violation of the provisions of 29 U.S.C. §1024(b)(4).

62. The violations of 29 U.S.C. §1024(b)(4) have damaged the Plaintiff by impeding its ability to determine the extent and scope of coverage under the Plan, hindering verification of the degree to which exclusions or limitations on coverage exist, impairing the Plaintiff's ability to pursue administrative appeal of the Plan's denial of payment, and hindering the Plaintiff's ability to determine whether the Defendants' denial was meritorious.

63. In addition, as a consequence of the failure of the Defendants to provide the requested information in a timely manner, the Plaintiff has been required to obtain legal counsel and file this action.

64. Pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-3, the Plaintiff is entitled to payment of statutory damages of a maximum of $110.00 per day from thirty days after the

date the information was requested to the date of the production of the requested documents, as well as an award of attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

65. The maximum statutory damages which have accrued for the requests which Plaintiff has made for the Summary Plan Description (SPD) and Plan Document (PD), which went unanswered, is at least $175,010.00.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For judgment on Plaintiff's First Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. §1132(a)(1)(B), for unpaid medical benefits in the amount of $51,002.92 for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

2. For judgment on Plaintiff's Second Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3)), for breach of fiduciary duty and equitable damages in the form of unpaid medical benefits in the amount of $51,002.92, for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

3. For judgment on Plaintiff's Third Cause of Action, in the amount of $110.00 per day from 30 days following the date of each request, to the date of production of the requested documents against HMS, attorney's fees and costs incurred pursuant to 29 U.S.C. §1132(g), and post-judgment interest incurred to date of payment of the judgment.

For such other equitable relief under 29 U.S.C. §1132(a)(3) as the Court deems appropriate.

DATED this 20th day of August, 2018.

                                  MARCIE E. SCHAAP, ATTORNEY AT LAW

                                  By: /s/ Marcie E. Schaap
                                         Attorney for Plaintiff